# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CT-00726-SCT

*RICHARD A. KNUTSON*

*v.*

*JANET T. KNUTSON*

## ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/93 |
| TRIAL JUDGE: | HON. GERALD E. BRADDOCK |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RABUN JONES |
| ATTORNEY FOR APPELLEE: | WILLIARD L. McILWAIN, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 12/18/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/12/98 |

**EN BANC.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. This matter comes before the Court after having granted Richard A. Knutson's petition for writ of certiorari. On April 1, 1993, the chancellor entered a final decree of divorce to Janet on the ground of habitual cruelty. In the decree, the chancellor ordered Richard to pay Janet $4,100 per month in child support, all reasonable and necessary medical, dental, orthodontic, optical, and drug expenses for the six minor children, and $1,000 per month in periodic alimony until such time as Janet dies or remarries. Richard was also ordered to keep $500,000 in life insurance until the minor children reach age of majority. The Court of Appeals affirmed the judgment of the trial court and in so doing rendered an opinion in conflict with prior opinions of this Court. We find that in awarding child support, the chancellor failed to follow the dictates of sections 43-19-101(2) and 43-19-101(4), which mandate an on-the-record finding where child support is awarded below or in excess of the child support award guidelines. Accordingly, we reverse and remand for proceedings consistent with this opinion.

## STATEMENT OF FACTS

¶2. In 1976, Dr. Richard Knutson, an orthopedic surgeon hired Janet to work as a registered nurse and bookkeeper in the Delta Orthopedic Clinic. In November of 1981, Janet and Richard married. This was both Janet's and Richard's second marriage. Six children were conceived during this marriage.

¶3. In September of 1984, Richard and Janet moved from a house on Washington Avenue, which was owned solely by Richard, into a larger house on Idlewild Drive, which was titled in both parties' names. In 1988, Richard and Janet began experiencing marital problems, which eventually led to Janet filing a Complaint for Divorce on May 22, 1992, alleging habitual cruelty as ground for the divorce. The relief sought included child custody, alimony, child support, use and possession of the Idlewild residence, an equitable division of assets, and that Richard be ordered to maintain life and medical insurance policies.

¶4. A Consent Temporary Decree was entered on May 29, 1992, for Richard to pay support from $7,500 to $8,000 per month. On September 23, 1992, Janet filed a contempt action against Richard for failure to abide by the support requirements of the temporary decree. The court determined that Richard's failure to pay was not contemptuous.

¶5. On April 1, 1993, the chancellor entered a final decree of divorce to Janet on the ground of habitual cruelty. In the decree, the chancellor ordered Richard to pay Janet $4,100 per month in child support, all reasonable and necessary medical, dental, orthodontic, optical, and drug expenses for the six minor children, and $1,000 per month in periodic alimony until such time as Janet dies or remarries. Richard was also ordered to keep $500,000 in life insurance until the minor children reach age of majority.

¶6. On April 12, 1993, Richard filed a Defendant's Rule 52(b) Motion to Amend and Supplement Findings of Facts and Conclusion of Law, wherein he requested, among other things, a supplementary finding pursuant to § 43-19-101 of the Mississippi Code of 1972. Richard also filed a motion for new trial. Both motions were denied.

¶7. In his direct appeal, Richard argued that: (1) the trial court erred in granting a divorce on the ground of habitual cruelty; (2) the trial court erred in dividing the parties' assets and in failing to properly consider his $115,000 debt to Delta Swampland, Inc.; (3) the trial court erred in requiring him to assume sole responsibility for the $180,000 tax debt of the parties; and (4) the trial court erred in the amount of alimony and child support awarded to Janet. The Court of Appeals affirmed on all issues.

ANALYSIS

STANDARD OF REVIEW

¶8. In this domestic relations case, we are asked to decide whether the trial court erred in its distribution of marital assets, award of periodic alimony, and award of child support? This Court "will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1995) (citations omitted).

**I.**

¶9. Richard first contends that the net effect of the property division in the instant case was to leave him with a negative net worth and Janet with a net worth in excess of $100,000 and that in affirming this award, the Court of Appeals failed to apply the holdings in *Hemsley*, *Ferguson*, and *Johnson*. Richard argues that the chancellor erred in divesting him of all his interest in the house on Washington Avenue since he owned that property prior to his marriage; that the chancellor erred in awarding Janet twenty-seven and one half percent interest in his total firearms, nautical antiques and art work collections, which is half of that collected during the marriage. Richard explains that while the chancellor awarded Janet a percentage of his collections, she was already in possession of assets valued at from $48,000 to $52,000, which consisted in large part of gifts that he gave her during the term of the marriage.

¶10. The division of marital assets is governed by the guidelines delineated in *Johnson*, *Ferguson*, and *Hemsley*. The first step is to identify the character of the parties' assets, both marital and nonmarital, pursuant to *Hemsley*. *Johnson*, 650 So. 2d at 1287. The chancellor should then, in light of each party's nonmarital property, employ the *Ferguson* factors as guidelines and equitably divide the property. *Id.* The Court instructed the chancellor to do no more "[i]f there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties. . . ." *Id.* However, "[i]f the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered." *Id.*

¶11. A review of the proceedings below indicates that the chancellor made "a record of his determination of both parties' nonmarital assets, of his equitable distribution in light of each parties' nonmarital property, guided by the Ferguson factors." *Johnson*, 650 So. 2d at 1287. Among other things, the chancellor found that: (1) "After the parties were married, Defendant did not want Plaintiff to continue working, and Plaintiff ceased working as an R.N. sometime after the parties were married, but continued to keep Defendant's books for his orthopedic practice and other business endeavors until 1986 or 1987;" (2) "the proof shows after 1986 and 1987, Plaintiff devoted herself to her household duties for herself, the Defendant and their six children, but worked and assisted Defendant throughout the marriage in accumulating what assets they had accumulated since their marriage; and (3) that "even though Defendant purchased the Washington Avenue home prior to the marriage, Wife worked and assisted Defendant and contributed to Defendant's being able to continue the mortgage payments and create equity now held in the house and contributed monies she brought into the marriage in renovations to the home."

¶12. In the instant case, the chancellor found that Janet had contributed services as a nurse and bookkeeper during the marriage, as well as a homemaker, and thus was entitled to a fair and equitable distribution of the property. Accordingly, the chancellor awarded her the Washington Avenue property, valued at $70,000, which was titled to Richard and Richard was ordered to pay all indebtedness on that residence. The chancellor also awarded Janet one-half the total value of the firearms, nautical antiques, value of the artwork, accumulated after the marriage (approximately 27.5% of total value), and the couple's Dodge van.

¶13. Richard received the residence on Idlewild, valued at $175,000, and which had $32,000 in

equity, all of the gun collection, nautical antiques and art work that he had prior to the marriage and one-half of the value of the collection acquired after the marriage, all of his interest in the Sugardyne Corporation, all of the property owned by Delta Swampland, and one-half interest in eighty acres near Hot Springs, Arkansas.

¶14. This Court has stated that in determining what is equitable division of property upon divorce, "the chancellor is not limited to consideration of the earning and cash contributions of each party to the accumulation of the property. It is sufficient contribution if one party renders services generally regarded as domestic in nature." *Draper v. Draper*, 627 So. 2d 302, 306 (Miss. 1993). Additionally, a division of assets accumulated through the joint efforts and contribution of the parties is within the discretion of the Court. *Id.*; *See also Johnson v. Johnson*, 650 So. 2d 1281 (Miss. 1995).

¶15. Based on the record before the Court, the chancellor did not err in his consideration of equitable principles to divide the marital assets.

## II.

¶16. Richard next contends that both the property division awarded to Janet and the periodic alimony awarded to Janet expanded in the instant case, instead of one of them receding. In *Ferguson*, the Court explained that "[a]ll property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together." *Ferguson*, 639 So. 2d at 921. "If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done." *Johnson*, 650 So. 2d at 1287. Alimony should be considered only "[i]f the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party." *Id.*

¶17. As indicated in issue one, the chancellor provided a record of his determination of both parties' marital assets, of his equitable distribution in light of each parties' marital property." *Johnson*, 650 So. 2d at 1287.

¶18. Based on the record before this Court, the chancellor did not abuse his discretion. This issue is without merit.

## III.

¶19. Finally, Richard contends that the chancellor erred in awarding child support in excess of the child support guidelines without making specific findings. Richard also argues that in affirming the chancellor's decision, the Court of Appeals rendered a case in conflict to published opinions of this Court.[1] We agree.

¶20. Janet argued that based on Richard's earnings per year from his clinic, the chancellor's award should be affirmed as being in line with section 43-19-101, which is the child support guidelines wherein the statute says five or more children should receive 26% of adjusted gross income for support. She asserts that this is especially true when one considers the lifestyle enjoyed by the parties prior to the divorce and the expenses in maintaining her and the six children.

¶21. In his findings of fact and conclusions, the chancellor indicated that Richard's adjusted gross

income was $122,000. The chancellor made the following finding:

> The proof shows Defendant with a net income before taxes in 1992 of $97,475.00. However, included in Defendant's expenses deducted from his gross income are $24,000.00 in wages paid to Plaintiff in 1992, payment of one-half Plaintiff's Society Security, legal fees for patents for which no monetary gain has been derived in seventeen years by Defendant, and life insurance and disability insurance premiums of $15,860.00. Though not the same, these same expenses were deducted from Defendant's 1990 and 1991 gross income.

¶22. Janet and Richard had six children during the marriage. The child support award guidelines, as listed in section 43-19-101(1), provide that for five or more children, the chancellor should award twenty-six (26) percent of adjusted gross income for child support. Twenty-six percent of $122,000 is $2,643.33 per month. For the support of his six children, the chancellor ordered Dr. Knutson to pay $4,100. This is a increase of $1,456.67.

¶23. Section 43-19-101(2) provides that where the amount specified in the guidelines is increased or decreased, the chancellor should make a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate. Moreover, § 43-19-101(4) provides "In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable." Miss. Code Ann. § 43-19-101(4) (1972).

¶24. In arriving at the amount of support, that Richard would be required to pay, the chancellor made the following findings:

> Plaintiff showed monthly living expenses of $8,087.00, but included therein were [sic] house note on the Idlewild Drive property[2] which Plaintiff will not have, but she will be responsible for the $384.00 monthly note by having the Washington Avenue house. Plaintiff has also shown utility costs on the Idlewild Drive house and the utility costs will certainly not be as much on the Washington Avenue home. Plaintiff has also shown private school expenses of $1,141.00 per month, which has been provided over the years. Also included in her monthly expenses of $225.00 per month and $100.00 repayment to Plaintiff's mother. It is evident that Plaintiff and the minor children of the parties have been supplied over the years with a style of living at a substantial cost and Defendant should be required to pay to Plaintiff for her support of the minor children an amount so they can maintain a reasonably high standard of living. However, in making any award consideration has to be given to leaving Defendant with sufficient income to also maintain a reasonable standard of living.

¶25. As indicated above, the chancellor made specific findings relative to the child support award, however, he did not make reference to the child support guidelines. Since he did not reference the guidelines, clearly he did not make specific findings on why the application of the guidelines would be unjust or inappropriate.

¶26. On appeal, the COA affirmed the chancellor's decision, however, it did so without any reference to the child support guidelines. In affirming the chancellor's decision, the COA added the $1,000 monthly periodic alimony to the $4,100 child support award to arrive at $5,100, and explained that

the payment of $5,100 per month would be roughly one-half of Richard's monthly net income. The court concluded that "[w]hile paying fifty percent of one's net income for child support and alimony may seem high, it should be understood that Mrs. Knutson, who is unemployed, must also bear the responsibility of supporting all six children."

¶27. Although the chancellor made some findings relative to the award of child support, and although the chancellor was not *bound to follow* the child support guidelines, the statute and case law are clear that he should have begun with the child support guidelines and then, if necessary, increased the amount of the award, showing specific reasons for the increase. ***See e.g.,*** Miss. Code Ann. §§ 43-19-101(1) and 43-19-101(4) (1972); ***Johnson v. Johnson***, 650 So. 2d 1281 (Miss. 1995) (explaining that a chancellor may depart from the guidelines if he makes an on-the-record finding of the appropriateness of the need to do so. "Without a written justification, such a departure is error by law and reversible. . .").

¶28. For the foregoing reasons, we find that the chancellor erred in not following this Court's precedent and the requirement of the statute in the award of child support. Accordingly, we reverse and remand on this issue.

¶29. **REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. On April 12, 1993, Richard filed a Defendant's Rule 52(b) Motion to Amend and Supplement Findings of Facts and Conclusion of Law, wherein he requested, among other things, a supplementary finding pursuant to section 43-19-101 of the Mississippi Code of 1972 "as to whether or not the application of the child support guidelines to this case would be reasonable or alternatively, if not reasonable a statement as to why the Court departed from an application of such guidelines." In response, Janet argued that "based on the proof as to Dr. Knutson's income, it is submitted that the child support award by the Court based on the lifestyle of the children and the income of Dr. Knutson are well within the guidelines set forth by the Legislature." On June 15, 1993, the chancellor denied the motion. The trial court also denied the motion for a new trial.

2. Janet asked the court *not* to award her this property, which has a monthly note of $2,125. Accordingly, the court awarded this property to Richard.