## IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
## NO. 96-CA-00567 COA

**SHIRLEY B. WARING**                                                       **APPELLANT**

**v.**

**RICHARD L. WARING**                                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/06/96 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN E. ELLIS |
| | CLYDE EMIL ELLIS |
| ATTORNEYS FOR APPELLEE: | J. MACK VARNER |
| | SAMUEL D. HABEEB |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | DIVORCE GRANTED ON IRRECONCILABLE DIFFERENCES; ALIMONY AWARDED TO APPELLANT |
| DISPOSITION: | REVERSED AND REMANDED - 10/13/98 |
| MOTION FOR REHEARING FILED: | 10/27/98 |
| CERTIORARI FILED: | 3/9/99 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, P.J., DIAZ, AND KING, JJ.

McMILLIN, P.J., FOR THE COURT:

¶1. Shirley Waring and Richard Waring agreed to a divorce on the ground of irreconcilable differences. Unable to resolve all issues relating to property rights and post-divorce support obligations, the parties agreed in writing to submit those issues to the chancellor for resolution. The chancellor, after a lengthy evidentiary hearing, awarded Mrs. Waring sole title to the marital home, an amount of lump sum alimony, and provided her with rehabilitative alimony for a period of three years. Mrs. Waring has appealed, claiming that the chancellor's failure to be more generous was a manifest abuse of discretion. We agree and, therefore, reverse and remand for further proceedings.

**I.**

# Facts

¶2. The parties were married on October 17, 1987 and separated finally on December 15, 1993. They were not divorced until March 1996; however, much of that period was taken up with litigation in pursuit of a divorce. For purposes of our discussion, therefore, we will consider that this was a marriage of approximately six years duration.

¶3. Prior to the marriage, Mrs. Waring was a Louisiana resident who provided her own support by operating several businesses. One business was shut down and another was sold in contemplation of the marriage. Another business activity, involving residential interior decorating services, was continued on a part-time basis after the marriage, but it did not produce significant income to Mrs. Waring. Mr. Waring, for his part, was engaged in a number of businesses owned by Mr. Waring and certain other relatives that included a propane gas distributorship, a company engaged in the distribution of gasoline and related petroleum products, and a company that operated a number of convenience stores. Mr. Waring was a shareholder in these businesses, along with his relatives, and all of the businesses were operated as subchapter S corporations. The evidence suggests that Mr. Waring was compensated for his efforts in the family businesses by way of salary and periodic distributions of earnings. These sources of compensation provided essentially the sole source of support for the family during the marriage. Mrs. Waring did not play an active role in the businesses; however, she did become active in a significant way in local politics and served as the first female president of the country club to which the parties belonged. Mrs. Waring testified that she did, on occasion, assist in business activities; however, it is not subject to reasonable dispute that those activities were sporadic.

¶4. The marriage was the first for Mr. Waring and Mrs. Waring's third. Mr. Waring was thirty-two years of age at the time of the marriage and Mrs. Waring was thirty-nine. No children were born of the marriage. There is no evidence that either party was suffering from any significant health problems at the time of the divorce.

¶5. Mr. Waring's holdings in the family corporations predated the marriage. In addition, he owned a condominium property prior to the marriage. Mrs. Waring's separate estate at the time of the marriage consisted of an automobile which was thereafter used as the family vehicle throughout the marriage. In addition, she testified that she received funds in the approximate amount of $5,000 from the sale of one of her businesses and that she contributed those funds to the marriage. At the time of divorce, she had no separate bank accounts or investments. Mr. Waring had, during the marriage, accumulated funds in a retirement account. He testified that the account had increased by approximately $30,000 during the marriage. Mrs. Waring claimed that the fund had increased by approximately $44,000 during that time.

¶6. The parties had purchased an older home during their marriage and expended considerable sums in rehabilitating and refurbishing the home. Proof was offered that the property had an approximate value of $212,000; however, it was subject to two outstanding mortgage debts that totaled about $195,000. The chancellor did not make a specific finding as to the market value of the property.

¶7. There was evidence presented to the chancellor that the family businesses in which Mr. Waring was a shareholder and in which he was an active participant had increased substantially in value

during the course of the marriage. This increase in value was apparently due, at least in part, to acquisitions of new properties and expansion of the number of convenience stores owned and operated by these family-held corporations. These acquisitions and expansions were partially financed by bank loans; however, there was also evidence that a significant part of the money for these expansions came from the profits of the operation of the businesses themselves. The parties hotly disputed the amount of the increase in value of these businesses during the marriage. Mrs. Waring produced expert opinion evidence from an accountant who had done an evaluation of these closely-held corporations that indicated that the value of Mr. Waring's holdings had increased in value from $668,101 at the time of the marriage to approximately $4,038,404 at the time of the divorce.

¶8. There was evidence presented in the form of Mr. and Mrs. Waring's joint federal tax return for 1994 that indicated the couple had an adjusted gross income before taxes of $424,639. In 1993, the couple's adjusted gross income was $409,396. In addition, Mr. Waring was furnished an automobile through the family businesses. Insofar as the evidence shows, all of this income was traceable to the efforts of Mr. Waring.

¶9. Mrs. Waring testified that her reasonable monthly living expenses, without consideration of income taxes, was $7,563. The chancellor made a determination that a more reasonable assessment of her needs based on the evidence was $4,213. Mr. Waring's testimony concerning his living expenses showed a total of $1,406.

¶10. Based on this evidence, the chancellor awarded Mrs. Waring the following:

(a) Title to the residence and the bulk of the contents; however, the chancellor ordered that Mrs. Waring be solely responsible for the entire outstanding mortgage indebtedness against the property.

(b) One half the value of Mr. Waring's retirement account, characterizing this as lump sum alimony.

(c) Rehabilitative alimony in the amount of $4,200 a month for twelve months, then the reduced sum of $3,700 per month for the next twenty four months.

(d) Attorney's fees of $10,000 and suit fees of $3,000 to pay toward the expert witness fees of the accountant who did the valuation of the closely-held corporations.

¶11. Mrs. Waring filed a motion for reconsideration of the various aspects of this award. The chancellor declined to modify the judgment in any respect except to order Mr. Waring to pay one-half of a $4,000 repair bill related to the marital domicile.

¶12. Mrs. Waring presents four issues on appeal, which we will now proceed to consider.

## II.

### The Failure to Consider Mr. Waring's Business Holdings When Making an Equitable Division of Marital Assets

¶13. Mrs. Waring claims that some equitable portion of Mr. Waring's stockholdings in the family businesses ought to have been considered marital property for purposes of equitable distribution. The chancellor ruled that these assets were separate property brought to the marriage by Mr. Waring and,

thus, not subject to equitable division except to the extent that Mrs. Waring could demonstrate that her efforts during the marriage had directly contributed to the increase in value of the holdings. *See Carrow v. Carrow,* **642 So. 2d 901, 907 (Miss. 1994)** (citing *Smith v. Smith,* 433 S.E.2d 196, 204 (N.C. Ct. App. 1993)). Mrs. Waring argues that this is a misinterpretation of existing law, and that her contributions toward the increase in value of these business holdings can be indirect to include such contributions as providing domestic services to the family. *Ferguson v. Ferguson,* **639 So. 2d 921, 934 (Miss. 1994).**

¶14. We agree with Mrs. Waring that the chancellor should have taken into consideration, for purposes of equitable distribution or some alternate form of award in lieu of an in-kind distribution, the part of the increase in value of Mr. Waring's share of these family-owned businesses that was fairly attributable to the active efforts of either of the parties during the marriage. The proof is uncontradicted that Mr. Waring was, by the mutual agreement of the parties, solely responsible for producing the income for the family, and that Mrs. Waring's contributions were of a different nature. Though this form of the division of responsibilities may be found in a diminishing percentage of marriages, it is nevertheless one of long standing and one that the law recognizes as imposing certain obligations on the breakup of the marriage. The husband who provides all or the bulk of support may find, even after the dissolution of the marriage, that the law places on him a continuing obligation of support to maintain his wife to some degree. *Ferguson,* **639 So. 2d at 927;** *Brennan v. Brennan,* **638 So. 2d 1320, 1324 (Miss. 1994).**

¶15. A number of different considerations go into the determination of whether that obligation exists at all and, if it does, what level of support is appropriate. Principal among these criteria is the financial ability of the husband to pay. *Magee v. Magee,* **661 So. 2d 1117, 1125 (Miss. 1995).** The proof shows, in this case, that during this marriage the parties have experienced a rather remarkable growth in available resources acquired for the purpose of producing income. It appears beyond contradiction that a significant part of that increased wealth was due to the active efforts of Mr. Waring. It is nothing more than mere happenstance that this increased wealth acquired during the marriage is represented by shares of stock in several closely-held corporations. This is not the case where a party brings certain assets to the marriage, keeps them segregated and set apart throughout the marriage, and it is later discovered that through the mere passage of time and the action of market forces, these assets have experienced an increase in value. In assessing the equity of this situation, it is no different from the situation where the principal income producer has, through efforts expended during the marriage, substantially increased his salary while in the employ of another or has, through his efforts, accumulated significant business holdings owned solely by the income producer. In either of these two latter cases, it does not appear subject to dispute that, upon the dissolution of the marriage, the non-earning spouse who contributed to the marriage in other ways would be entitled to serious consideration for an equitable distribution of these business assets under *Ferguson* **and** *Hemsley.* *Ferguson,* **639 So. 2d at 934;** *Hemsley v. Hemsley,* **639 So. 2d 909, 915 (Miss. 1994)**.

¶16. This Court is of the opinion that the entitlement of one spouse to share in the accumulation of wealth that occurred during the course of the marriage ought not to be thwarted simply because the wealth was accumulated in a closely-held corporation. In his brief, Mr. Waring attempts to make much of the fact that there was no evidence that this means of conducting his business affairs was adopted for the sole purpose of thwarting Mrs. Waring's rights in the event of divorce. By our holding, we do not mean to imply that Mr. Waring's motives during the marriage were improper.

Wrongdoing by either spouse in this context is not an issue.

¶17. Having determined that, as a matter of law, Mrs. Waring is entitled to *some* consideration for the increased valuation of Mr. Waring's holdings that arose out of Mr. Waring's affirmative efforts during the marriage, we also observe that it is not absolutely necessary that she receive her equitable share of this increased wealth in kind. The chancellor is given wide discretion in reaching a final resolution of all financial matters involved in the dissolution of a marriage. *Armstrong v. Armstrong,* **618 So. 2d 1278, 1280 (Miss. 1993).** In that discretion is the authority to grant varying kinds of monetary awards to include in-kind distributions of property, lump sum alimony, periodic alimony, and rehabilitative alimony. *Hubbard v. Hubbard,* **656 So. 2d 124, 129 (Miss. 1995)**. The supreme court has observed that, in doing so, it is inescapable that when one aspect is increased there is necessarily a corresponding decrease in the paying spouse's ability to meet some other obligation. *Brooks v. Brooks,* **652 So. 2d 1113, 1121 (Miss. 1995);** *Ferguson,* **639 So. 2d at 929.** Thus, the chancellor is charged to come up with an appropriate mixture of various forms of awards that, on the particular facts of the case being tried, produces an equitable result when viewed in its totality. *Hubbard,* **656 So. 2d at 129.**

¶18. By way of example in this case, the chancellor may reasonably conclude that it would be detrimental to the interests of both parties to award Mrs. Waring any direct interest in the family businesses. In such case, it is within the chancellor's authority to determine what reasonable value ought to be given to Mrs. Waring for her contribution to this increased wealth of the family, and to award it in the alternate form of lump sum alimony, payable in such installments as, based upon the proof, would not prove detrimental to Mr. Waring's business interests or unduly cripple his ability to maintain a reasonable standard of living. As a practical matter, when the proof indicates that these business interests are producing income to Mr. Waring in excess of $400,000 a year, it is difficult to imagine, even considering Mr. Waring's (and his fellow shareholders') need to hold and reinvest some portion of those earnings, that some payment schedule equitable to both parties could not be devised by the chancellor.

¶19. Alternatively, should the chancellor conclude that a lump sum award of sufficient magnitude to fairly provide for Mrs. Waring might unduly jeopardize Mr. Waring's business interests, the chancellor certainly has the alternative authority to make an award of permanent alimony. Though the marriage in this case was of relatively brief duration, the fact remains that Mrs. Waring, by the mutual agreement of the parties, has suffered a six year interruption in her efforts to be self-supporting financially. She was, at the time of the divorce, forty-seven years of age. There was no credible evidence presented that she had any employable skills or any real opportunity for employment. The only evidence of her income producing ability consisted of proof that she had previously operated a number of businesses. When discussing Mrs. Waring's initial economic contributions to the marriage derived from liquidating her business interests, Mr. Waring's brief is rather disparaging. When discussing her ability to provide for her own needs after termination of the marriage, on the other hand, the brief is quite laudatory of Mrs. Waring's entrepreneurial skills. Whatever those skills might be, there is no proof that she has any prospects for such a business venture and it appears with some certainty that, to the extent any such effort required some minimal level of capital investment, Mrs. Waring has been left by this divorce decree without any available assets in any significant degree to embark on such an enterprise.

¶20. We find that this award is little more than an attempt to restore Mrs. Waring to her financial condition prior to the marriage. On the facts of this case, we conclude that Mrs. Waring is entitled to some measure of assistance from Mr. Waring in continuing to meet her financial needs that extends beyond this seemingly bare minimum award.

¶21. What form that additional relief may take is a matter that, at this point, must remain within the wide discretion given to chancellors in these circumstances. In all events, however, it is incumbent upon the chancellor to fashion an award that takes into account Mrs. Waring's non-economic contribution to the family enterprise that occurred at the same time Mr. Waring's active efforts were going toward the accumulation of significantly greater wealth, and that also takes into account, to some reasonable degree, Mr. Waring's continuing obligation to support and maintain Mrs. Waring in the station in life to which she became accustomed during the marriage. **_Knutson v. Knutson,_ 704 So. 2d 1331 (¶14) (Miss. 1997); _Brooks,_ 652 So. 2d at 1122.**

¶22. We do not find the chancellor's conclusion that Mrs. Waring's reasonable needs ranged in the approximate amount of $4,213 to be unreasonable. However, in view of (a) Mrs. Waring's age, (b) the interruption in her work history occasioned by this marriage, (c) the dearth of evidence of her prospects to produce significant sums for her own support, and (d) Mr. Waring's unquestioned ability to make some reasonable provision to his former wife without unduly jeopardizing his ability to live a comfortable lifestyle, we find that the chancellor's decision to effectively end Mr. Waring's obligation for the continuing support of his wife in only three years to be manifestly inequitable.

## III.

### Attorney's Fees and Suit Fees

¶23. Mrs. Waring complains that the chancellor awarded her only $10,000 in attorneys fees and $3,000 in expert witness fees when she presented proof that her attorney's fees were $25,299.40 and that she owed $24,270.00 in witness fees to the accountant who did the evaluation of Mr. Waring's stock in the family businesses. The chancellor found that much of these fees, both the attorney fees and the accountant's fees, were incurred in gathering and presenting evidence relating to the value of Mr. Waring's business holdings. The chancellor found that, because these holdings were brought into the marriage and were, thus, not subject to equitable division, this proof was irrelevant and that any fees expended in pursuit of that evidence were, by definition, not reasonable.

¶24. Because we have determined that at least some portion of the increase in value of these holdings (that part traceable to Mr. Waring's active management efforts during the marriage) is relevant in fashioning an equitable award to Mrs. Waring, it may be that on remand much of this evidence may prove helpful to the chancellor. To the extent that this evidence proves of assistance, Mrs. Waring should be entitled to have it considered for reimbursement under the guidelines of such cases as **_Creekmore_ and _McKee_. _Creekmore v. Creekmore,_ 651 So. 2d 513, 520 (Miss. 1995); _McKee v. McKee,_ 418 So. 2d 764, 767 (Miss. 1982).** We, therefore, reverse the matter of attorney's fees and suit fees and remand them for redetermination in accord with the discussion in this paragraph after the chancellor has determined what additional monetary relief Mrs. Waring merits.

## IV.

## Attorney's Fees on Appeal

¶25. Mrs. Waring asks for attorneys fees for prosecuting this appeal. Because she was successful in her appeal, it would be customary to award her one-half of that amount awarded at the trial level. *See, e.g., Schilling v. Schilling,* **452 So. 2d 834, 836 (Miss. 1984)**. This case has taken a somewhat different turn in that we have reversed the award of attorney's fees and remanded that question on terms which suggest that an increase in the award *may* be appropriate. It could be argued that, if Mrs. Waring is in equity entitled to a larger fee than the $10,000 the chancellor awarded her, she ought properly to be entitled to a larger fee on appeal than one-half of $10,000.

¶26. However, in the interest of some finality on this aspect of the case, we hereby award Mrs. Waring the sum of $5,000 as attorney's fees to be paid by Mr. Waring for the successful prosecution of this appeal.

## V.

## Conclusion

¶27. We conclude that equitable considerations that arise on the dissolution of a marriage suggest that Mrs. Waring is entitled to a measure of financial protection for the future that extends beyond that obtained by her in this proceeding. Whether that additional protection ultimately takes the form of an equitable setting off to her of additional assets, an increase in lump sum alimony, or an award of periodic alimony in some reasonable amount, is a matter that must be resolved, in the first instance, by the chancellor.

¶28. Therefore, we reverse and remand for proceedings consistent with this opinion.

¶29. **THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS REVERSED AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**


**THOMAS, P.J., DIAZ, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. BRIDGES, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J. HERRING, J., NOT PARTICIPATING.**


BRIDGES, C.J., DISSENTING:


¶30. I respectfully dissent from the majority opinion on both issues presented by this appeal. The main function of this Court is to correct errors made in lower courts, and, accordingly, "[o]ur scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." ***Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1994) (citing**

***McEwen v. McEwen*, 631 So. 2d 821, 823 (Miss. 1994))**. I cannot agree that the chancellor was manifestly wrong, clearly erroneous, or that she applied some erroneous legal standard in finding as she did.

¶31. "We, as an appellate court, will affirm the decree if the record shows any ground upon which the decision may be justified. . . . We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors." ***Tucker v. Tucker*, 453 So. 2d 1294, 1296 (Miss. 1983)** (citing *Yates v. Yates*, 284 So. 2d 46, 47 (Miss. 1973)). Further, "findings of fact made by a chancellor may not be set aside or disturbed on appeal unless manifestly wrong. This is so whether the finding relates to an evidentiary fact question . . . or an ultimate fact question . . . ." ***Id.* at 1296-1297.** In order for this Court to say that the chancellor has abused her discretion, there must be insufficient evidence to support her conclusions. ***Id.***

¶32. The chancellor in the case before us properly made her decision based on a careful consideration of the testimony presented as evidenced by her well reasoned findings of fact and conclusions of law as directed in ***Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).** To reconsider the facts of this case would essentially usurp the discretionary role given to the chancellor in this case, and to concur with the majority's opinion would, in my opinion, violate our standard of review.

¶33. The chancellor correctly found that Mr. Waring's interest in three family-owned businesses, Waring Oil, Neill Gas and Three-W, predated the marriage and were non-marital property.

> Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage.

***Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994).** Non-marital property is not subject to the rules of equitable division. ***Johnson*, 650 So. 2d at 1286**. However, the appreciation of Mr. Waring's interests in the three companies during the course of the marriage would be subject to the rules of equitable division if such increase in value was due to the substantial contribution of Mrs. Waring. When evaluating the contribution of a spouse to the accumulation of the property during the marriage, the chancellor must consider the spouse's direct or indirect economic or domestic contribution to the acquisition of the property. ***Ferguson*, 659 So. 2d at 928.**

¶34. The chancellor found Mrs. Waring failed to prove by a preponderance of the evidence that such appreciation in value was due to her direct or indirect economic or domestic contribution to the businesses. As the court recognized in *Hemsley*,

> Presently the law often deals with a fiction that the parties are deemed to enter into marriage with two separate estates. Most parties enter into marriage with no estate and proceed to build an estate together. Therefore, in the event of a divorce, there is more often than not one estate. If the breadwinner happens to be the husband and has all property in his name, this serves to relegate the non-breadwinner wife to the equivalent of a maid--and upon division of the marital estate entitled to a minimum wage credit for her homemaking service. We abandon such an approach.

> We, today, recognize that marital partners can be equal contributors whether or not they both

are at work in the marketplace.

*Id.* **at 915**. Unlike the parties in *Hemsley* who were married in excess of twenty years and had two children, the Warings were married for six years before their separation, and no children were born of their marriage. In addition, the Warings came into their marriage with separate estates. The only direct testimony regarding Mrs. Waring's contribution to the businesses in which Mr. Waring had an interest was that she contributed by (1) running errands and performing other tasks on behalf of the businesses, such as answering the telephone and taking messages, (2) relaying any problems she noticed when visiting a store, (3) assisting in and developing ideas for the renovation of the harbor project offices and the store across from the National Military Park, (4) orchestrating a party for 100 business contacts, (5) increasing opportunities for business contacts by serving as president of the Vicksburg Country Club and actively participating in the Republican Women's Group, and (6) accompanying Mr. Waring on business trips. The chancellor did not totally discount these contributions; however, the chancellor found Mrs. Waring's indirect contributions did not substantially contribute to the appreciation of Mr. Waring's interest in the businesses, and thus the appreciation in value was not due to the joint efforts of the parties.

¶35. While the chancellor discussed the distinction between active and passive appreciation, the chancellor's ruling clearly found that absent proof of reinvestment of marital income into the businesses during the marriage or like services rendered by Mrs. Waring which substantially contributed to the appreciation of Mr. Waring's interest in the non-marital property, Mrs. Waring was entitled to alimony only, not equitable distribution of the appreciation in value of Mr. Waring's interest in Waring Oil, Neill Gas and Three-W.

¶36. Accordingly, there is nothing in the record of this case that would indicate that the chancellor's decision was manifestly in error, either as to the facts or to the law. Therefore, her findings of fact and conclusions of law and judgment rendered should be affirmed. To do otherwise would be to substitute our judgment for the judgment of the chancellor, who was present to hear and consider the testimony, as well as, view the demeanor of the parties and witnesses who testified.

**COLEMAN, J., JOINS THIS SEPARATE OPINION.**