# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01532-SCT

*JERRY R. WALLACE*

*v.*

*ANN LANEY (JENI) WALLACE BOND*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/30/1997 |
| TRIAL JUDGE: | HON. JOSEPH W. WALKER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LAWRENCE PRIMEAUX |
| ATTORNEY FOR APPELLEE: | WEBB FRANKLIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 08/19/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: 09/09/99 | |

**BEFORE PITTMAN, P.J., McRAE, AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Jerry R. Wallace appeals to this Court from an adverse decision of the Chancery Court of Madison County which found that Wallace's child support should be increased. After due consideration, we find that the chancellor failed to make specific findings of fact as to why he deviated from the support guidelines set out by statute, Miss. Code Ann. 43-19-101(2) (Rev. 1993), *see **Knutson v. Knutson**, 704 So.2d 1331 (Miss. 1997)*. We also note that Ms. Bond offered very slim proof in support of her modification petition. We, therefore, reverse and remand.

## FACTS

¶2. Ann Laney (Jeni) Wallace Bond (hereinafter "Jeni") and Jerry R. Wallace (hereinafter "Jerry") were married on August 13, 1983, and two children were born of

the marriage, Jacob Rhoads Wallace, born July 11, 1990, and Laney McKee Wallace, born May 11, 1992. Irreconcilable differences led to their separation in June of 1992. A final judgment of Divorce was rendered on June 10, 1994 in the Chancery Court of Madison County, Mississippi.

¶3. Following the parties decree of divorce, Jeni maintained full custody, care, and control of said minor children. Reasonable visitation rights were granted to Jerry. According to their agreement, Jerry was required to pay the sum of $500.00 per month for each child for a total of $1,000.00 per month. The parties also agreed that, in addition to the $1,000.00 per month child support, Jerry would also be responsible for the children's medical bills in any amount that exceeded their policy coverage. Jerry also agreed to maintain a life insurance policy in the amount of not less than $250,000 for the benefit of the minor children, which cost Jerry $1,003.88 per month.

¶4. On March 27, 1997, Jeni filed a petition for modification of final judgment, alleging that, due to a material increase in Jerry's income and the increase in the children's needs, the final judgment should be modified. Jeni introduced as evidence earnings from Jerry's law firm, and his 1993, 1994, and 1995 federal income tax returns. She argued that these facts constituted a material change in circumstances since the time of final judgment and therefore the judgment should be modified.

¶5. At the time of the final hearing in this case, Jerry was employed with the Crosthwait Terney law firm in Jackson, Mississippi. He became employed with this firm in May of 1996 and was then promoted to partner in January 1997. In 1993, Jerry reported a total income of $38, 793. In 1994, Jerry reported total earnings of $123,677. And again, in 1995, Jerry reported total income of $123, 701. In 1997, at the time of the modification hearing, Jerry was receiving an annual draw from his firm of $115,000 against his partner's share of anticipated earnings.

¶6. Jeni is a registered nurse who is employed with Greenwood Leflore Hospital. Jeni has also remarried. She alleged, in testimony, that her monthly expenses exceeded her monthly income. Jeni also demonstrated that her two children were enrolled in private school which was due to a mutual decision of both Jeni and Jerry that Pillow Academy would be in the best interests of the children.

¶7. On March 27, 1997, Jeni petitioned the Chancery Court of Madison County, Mississippi for modification of final judgment. On November 3, 1997, Honorable J.W. Walker, ordered Jerry to pay $700 per month per child. This increased his total amount from $1,000 per month to $1,400 per month. The chancellor found that, since Jerry's income exceeds $50,000.00, and regardless of the child support guidelines set out in § 43-19-101 of the Mississippi Code of 1972, an increase of $200.00 per month per child was reasonable, warranted and supported by the evidence. However, the chancellor made no specific findings of fact to establish why the child support

guidelines would be unjust or inappropriate, if applied.

¶8. Aggrieved by the chancellor's findings, the Appellant/Jerry Wallace assigns two errors, as follows:

**I. WHETHER THE CHANCELLOR WAS MANIFESTLY IN ERROR IN FAILING TO FOLLOW THE CHILD SUPPORT GUIDELINES AND IN FAILING TO MAKE REQUIRED FINDINGS OF FACT SO THAT THE RULING INCREASING CHILD SUPPORT SHOULD BE REVERSED.**

**II. WHETHER THERE WAS ADEQUATE PROOF IN THE RECORD TO SUPPORT AN INCREASE IN CHILD SUPPORT.**

## STANDARD OF REVIEW

¶9. "Under the standard of review utilized to review a chancery court's findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the court on appeal unless its findings were manifestly wrong." *Mizell v. Mizell*, 708 So.2d 55 (Miss.1998), quoting *Tilley v. Tilley*, 610 So.2d 348, 351 (Miss.1992).

## LEGAL ANALYSIS

**I. WHETHER THE CHANCELLOR WAS MANIFESTLY IN ERROR IN FAILING TO FOLLOW THE CHILD SUPPORT GUIDELINES AND IN FAILING TO MAKE REQUIRED FINDINGS OF FACT SO THAT THE RULING INCREASING CHILD SUPPORT SHOULD BE REVERSED.**

¶10. Child support award guidelines are set out in Miss. Code Ann. § 43-19-101, which provides:

(1) The following child support award guidelines shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state:

| Number Of Children<br>Due Support | Percentage Of Adjusted Gross Income<br>That Should Be Awarded For Support |
|---|---|

| | |
|---|---|
| 1 | 14% |
| 2 | 20% |
| 3 | 22% |
| 4 | 24% |
| 5 or more | 26% |

(2) The guidelines provided for in subsection (1) of this section apply unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.

. . . .

(4) In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.

Miss. Code Ann. § 43-19-101

¶11. Section 43-19-101(2) provides that, where the amount specified in the guidelines is increased or decreased, the chancellor should make a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate. Moreover, § 43-19-101(4) provides "In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable." Miss.Code Ann. § 43-19-101(4)(Rev. 1993). *Knutson v. Knutson*, 704 So.2d 1331, 1335 (Miss. 1997). In *Knutson*, this Court reversed the decision of the chancellor because he failed to reference the child support guidelines. In the same way, failing to reference the guidelines clearly indicates that he did not make specific findings on why the application of the guidelines would be unjust or inappropriate. This Court went on to reason that the statute and case law are clear that the chancellor should have begun with the guidelines. Then, the amount of the award can be increased or decreased by showing specific reasons for the difference. *Knutson*, 704 So.2d 1331 at 1335.

¶12. Similarly in *Dufour v. Dufour*, 631 So.2d 192, 195-196 (Miss. 1994), this Court held that the Chancellor failed to make specific findings in regards to the appellant's

income and reversed for that reason. The Court pointed out that "[i]f the chancellor would make more on the record findings as to why he decides an issue or fact a certain way it would greatly decrease the chances of reversal of the decision by the Court." *Id.* This Court reversed and remanded for more specific findings regarding Appellant's income and the needs of the child.

¶13. In the case sub judice, the chancellor failed to follow the child support guidelines. He also failed to make specific findings of fact in regards to the children's increased needs and the amount of Jerry Wallace's income. The testimony of Jerry and Jeni is unclear in regards to Jerry's actual income, and in regards to the substantial increase in the needs of the children. Without such findings of fact, this Court is unable to determine whether or not the increase in child support was justified or whether or not the chancellor abused his discretion in modifying the child support award.

¶14. Appellee argues that the chancellor did make specific findings of fact in that, in the final judgment, the chancellor stated, "an increase in the amount of child support in the amount of $200.00 per month per child is reasonable, warranted, and supported by the evidence". The Appellee relies on the authority of *Thurman v. Thurman,* 559 So.2d 1014 (Miss. 1992). Mrs. Wallace Bond ("Jeni") relies on the statement in that case that states:

> The guidelines may be received and considered in all support matters as relevant, but the guidelines may not determine the specific need or the specific support required; this is to be done by a Chancellor at a real time, on a scene certain, and with a knowledge special to the actual circumstances and to the individual child or children.

*Id.* at 1017.

¶15. Appellee argues that, according to *Thurman*, the guidelines are not determinative and the decision should be left up to the chancellor who has knowledge of the actual circumstances of the child or children. In referring to that case, the Appellee failed to mention that the record was clear, there, that the chancellor did use the guidelines to determine the amount of the child support. *Id.* Appellee also argues that the guidelines may not determine specific need or support required. *Id.* at 1018. Although this is true, the Court went on to reason that other circumstances to be considered by the chancellor include the actual circumstances and need of the child or children. Again, in the case at hand, there is no evidence in the record that actually proves an increase in the need of the children. Jeni testified that the children were enrolled in Pillow Academy, however, there in no documentation presented or testified to in regards to the increase in the children's tuition. Without this evidence, the chancellor could not

have taken into account the specific circumstances of this case.

¶16. The issue comes down to whether or not the chancellor satisfied § 43-19-101(2) which provides that, where the amount set forth in the guidelines is either increased or decreased, the chancellor should make a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate. *See also Knutson v. Knutson*, supra. The same situation is present in this case.

¶17. There is no reference, by the chancellor, to the guidelines or to this subsection of the code. If the chancellor chose to retreat from the guidelines, he is required to make specific findings of fact as to the reason for the inapplicability of the statute. The chancellor therefore erred in not referencing the statutory guidelines in making his specific findings of fact regarding child support.

## II. THE DECISION TO INCREASE CHILD SUPPORT WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND THE CHANCELLOR WAS MANIFESTLY IN ERROR IN INCREASING CHILD SUPPORT.

¶18. With regard to the modification of a child support agreement, this Court in the case of *McEachern v. McEachern*, 605 So.2d 809 (Miss.1992) said, "The burden of proof that must be met by the party seeking a financial modification is to show a material change of circumstances of one or more of the interested parties, whether it be the father, mother, or the child(ren), arising subsequent to the original decree." *McEachern*, 605 So.2d at 813 (citing *Cox v. Moulds*, 490 So.2d 866, 869 (Miss.1986) and *Adams v. Adams*, 467 So.2d 211, 214 (Miss.1985)). See also, *McEwen v. McEwen*, 631 So.2d 821, 823 (Miss.1994).

¶19. The circumstances that lead to the material change that bring rise to modification of child support, must not have been reasonably foreseeable at the time of the divorce. *Morris v. Morris*, 541 So.2d 1040, 1042 (Miss. 1989). Similarly, applying the standards of *Morris*, the Court held in the *Anderson* case that a father's changing of jobs which led to a subsequent income reduction could not have been foreseeable at the time of the couple's divorce. *Anderson v. Anderson*, 692 So.2d 65 (Miss. 1997). For these reasons, the Court affirmed the chancellor's modification of child support because of the material change in income that was not foreseeable at the time of divorce.

¶20. The circumstances of the case sub judice are distinguishable from *Anderson* in that Jeni testified, ". . . things were really going to be tight until he got things up and running well." Based on her testimony, Jeni anticipated an increase in Jerry's salary,

and it was unclear from the record what Jerry's salary actually was. So, in regards to Jerry's income, Jeni barely met her burden of proof in showing a substantial change in circumstances that was unforeseeable at the time of their divorce.

¶21. Next, in regards to the substantial or material change in expenses regarding the children, there was only limited testimony constituting a material or substantial change. Jeni testified to large increases in the cost of raising the children; however, there was no documentary evidence to support her claim. The only testimony regarding the children was that they were enrolled in Pillow Academy. No evidence was introduced as to the amount of tuition at Pillow Academy, and yet the parties agreed for the children to attend and that Jenni would pay the tuition. Also, there was no testimony in regards to the substantial difference between Pillow Academy and the Presbyterian church, where the children were previously enrolled. Jeni testified that she did not ask Jerry for money then, "it wasn't until we registered at Pillow." Again, it was Jeni's burden at trial to prove that an actual increase in the children's expenses existed. *Adams v. Adams*, 591 So.2d 431, 435 (Miss. 1991). Although she testified that she had documentation of the substantial increase, no documentation was introduced. Obviously, additional cost occurred due to enrolling the children at Pillow Academy.

¶22. Appellee argues that the expenses of the children had substantially increased due to the purchase of a new home, and due to the children reaching school age and being enrolled in private school. In regards to the new home, Jeni had remarried and testified that the home mortgage had increased from $375 to $1,180. She also testified that the $1,180 was not her expense. Her new husband paid the house note, and only the house note, out of his monthly income. Regarding the increased needs in the children's education, there was no testimony as to the amount of the increase. Also, these occurrences were likely foreseeable at the time of the couple's divorce and both Jeni and Jerry mutually agreed that the children should be enrolled in Pillow Academy. Much of the evidence is unclear. Jeni has barely satisfied her burden of proving that a material or substantial change in circumstances has occurred since the final decree of divorce in regards to the children's needs.

¶23. In showing that a material change in circumstances has occurred since the final decree of divorce, the burden is on the petitioner. *Adams v. Adams*, 591 So.2d 431, 435 (Miss. 1991). In the case at bar, the burden is on Jeni to show that a material or substantial change in circumstances has occurred in regards to herself, Jerry, or the children. *McEachern*, 605 So.2d at 813. Again, "the material change in circumstances that necessitate the modification of child support must not have been reasonably foreseeable at the time of the divorce." *Morris v. Morris*, 541 So.2d 1040, 1042 (Miss. 1989).

¶24. "Chancellors in this state are given broad discretion in cases regarding the

modification of child support. However, we will reverse when [the chancellor] is manifestly in error in his finding of fact or has abused his discretion." ***Hammett v. Woods***, 602 So.2d 825 (Miss. 1992). In ***Morris v. Stacy***, this Court reversed a case very similar to the case sub judice because the evidence in the record was incomplete to determine the increased financial needs of the children. 641 So.2d 1194 (Miss. 1994).

## CONCLUSION

¶25. In the case sub judice, the chancellor made no specific findings of fact with respect to the application of the Child Support Guidelines. If a chancellor decides not to apply the guidelines of § 43-19-101, a written statement regarding the findings of fact is necessary to establish that applying the guidelines would be unjust or inappropriate. The chancellor's passing mention of the guidelines can hardly be said to constitute the kind of analysis required by § 43-19-101.

¶26. The chancellor was also in error by increasing the child support that was established in the decree of divorce without, again, making some finding of fact with regards to a material or substantial change in circumstances. Based on the testimony at trial, the evidence is unclear as to any substantial change in Jerry's income or in any substantial change in regard to the needs of the children. We remand for a rehearing on this issue. For this Court to affirm the chancellor's modification of child support, it would have to deal in speculation in order to support the chancellor's findings, or lack thereof as the case may be. This Court remands this case for rehearing and encourages the chancellor to be more specific in his findings of fact. The chancellor should also be mindful to Jerry's income, and the increased need of the children to justify the increase in monthly child support.

¶27. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**