# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-00260-SCT

*CHARLES W. RUSH*

*v.*

*LATRESA A. RUSH*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2004 |
| TRIAL JUDGE: | HON. JOHN S. GRANT, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN L. BEACH, III |
| ATTORNEY FOR APPELLEE: | WILLIAM D. KETNER |
| | JUDY BARNETT |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS VACATED AND REMANDED IN PART AND AFFIRMED IN PART - 06/29/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

EASLEY, JUSTICE, FOR THE COURT:

¶1. Charles Rush (Charles) and Latresa Rush (Latresa) were granted a divorce in Rankin County, Mississippi. Charles was granted "primary" physical custody of the parties' minor child, Rose Marie Rush (Rosie), but he was ordered to pay $400 per month in child support for Rosie and $500 per month in periodic alimony to Latresa. Both parties filed motions to alter or amend the judgment which were denied by the Chancellor. Charles appealed the

Chancellor's judgment, and the appeal was assigned to the Court of Appeals. Charles raised the following issues:

I. Whether the Chancellor erred in declaring that the goodwill of Hermetic Rush Services, Inc., was a marital asset that could be divided between the parties.

II. Whether the Chancellor erred in awarding child support payments to Latresa.

III. Whether the Chancellor erred in awarding Latresa periodic alimony.

IV. Whether the Chancellor erred in placing a judicial lien on Charles's home to secure payment of Charles's interest in Hermetic.

¶2. The Court of Appeals affirmed the judgment of the Rankin County Chancery Court in a divided, 5-3-1, decision. Issue II, which addressed the custodial parent, Charles, being ordered to pay $400 per month in child support for the minor child, Rosie, to the non-custodial parent, Latresa, resulted in the Court of Appeals' division. Charles filed a petition for writ of certiorari with this Court appealing the Court of Appeals' affirmance. This Court granted certiorari to consider the issue of whether the Court of Appeals erred in affirming the Chancellor's judgment ordering the payment of child support by a custodial parent to a non-custodial parent. Therefore, this opinion will only address the issue of child support.

**FACTS**[1]

¶3. Charles and Latresa were married on October 22, 1983, and separated in August of 2001. The marriage produced two children, Charles Sean Rush (Sean), born July 10, 1984, and

---

[1] The facts are largely taken from the Court of Appeals' opinion. *See **Rush v. Rush**,* 2005 WL 1870253 (Miss. Ct. App.).

2

Rosie, born October 14, 1991. On July 26, 2002, Charles filed a complaint for divorce on the grounds of Latresa's adultery. In his complaint, Charles requested custody of the children and an equitable distribution of the marital property. On September 13, 2002, Latresa filed a motion for relief, where she requested custody of the children, child support, alimony, and an equitable distribution of property. Before the divorce was finalized, Charles had physical custody of Sean, and Latresa had physical custody of Rosie. Charles paid $1,000 per month in temporary child support. After filing the complaint for divorce, Sean was emancipated by virtue of joining the United States Navy.

¶4. Trial was held on September 3 and 4, 2003. At the beginning of the trial, Latresa admitted to uncondoned adultery. The Chancellor granted a judgment of divorce in favor of Charles on the grounds of uncondoned adultery and retained jurisdiction to resolve matters relating to child custody, child support, and division of the marital property.

¶5. Charles is an air conditioning technician and owns a one-third interest, or 100 shares, in a business called Hermetic Rush Services, Inc. (Hermetic). Latresa was not employed during the time she and Charles were separated, but she helped operate Charles's business as a bookkeeper and secretary for approximately six years, and she also occasionally worked in temporary contract agencies at various times during the marriage. At the time of the trial, Latresa was attending community college part-time pursuing a degree in cosmetology.

¶6. The Chancellor appointed Pace and Company, Ltd., to value Hermetic. Kevin Lightheart completed the evaluation on December 16, 2002. After hearing all the evidence, the Chancellor valued Charles' one-third of Hermetic at $179,000 and found that none of the value

of the business was attributable to Charles's goodwill. Latresa was found to be entitled to receive $89,000, and the Chancellor placed a judicial lien on Charles's house to secure payment. The Chancellor awarded possession of the marital home to Charles finding that was in the best interest of the minor child. Latresa received $19,800 for her 50% share of the equity in the marital home.

¶7. The Chancellor granted Charles and Latresa joint legal and physical custody of Rosie, with Charles having the primary physical custody of Rosie. While physically healthy, Rosie exhibited some behavioral problems for which she had undergone counseling. Sean had already been emancipated. Although Charles was named custodial parent of Rosie, he was ordered to pay to the non-custodial parent, Latresa, $400 per month in child support for Rosie and $500 per month in periodic alimony.

## DISCUSSION

¶8. Charles was granted primary physical custody of the parties' minor child, Rosie, but he was also ordered to pay $400 per month in child support for Rosie to Latresa. The Chancellor applied the *Albright*[2] factors to the evidence and determined it would be in the best interest of the child to award Charles and Latresa joint legal and physical custody of Rosie. However, the Chancellor specified that Charles was awarded "primary" physical custody of Rosie, subject to Latresa's visitation.

---

[2] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

4

¶9. Included in the various types of physical custody which may be awarded by a chancery court pursuant to Miss. Code Ann. § 93-5-24, are joint physical custody and physical custody in one parent or the other. Although it is a phrase commonly used by lawyers and judges, there is actually no provision under the statute for "primary" physical custody. Furthermore, joint physical custody may be awarded only where "each of the parents shall have significant periods of physical custody." Miss. Code Ann. § 93-5-24(5)(c).

¶10. Based on the visitation schedule expressly ordered by the Chancellor, Charles bore the bulk of responsibility for Rosie, having her the vast majority of the time. Therefore, Charles appealed the Chancellor's judgment ordering him to pay monthly child support for Rosie.

¶11. Charles argues that the child support payment to the non-custodial parent, Latresa, improperly amounts to additional alimony, not child support. Charles was ordered to pay monthly alimony to Latresa[3], pay Latresa for 50% of the marital property, maintain health insurance coverage on Rosie, and Latresa was relieved of any child support obligation for Rosie. Clearly, the Chancellor had taken the disparity of income into account.

¶12. The Court of Appeals' majority opinion found:

> The Chancellor granted joint legal and physical custody of Rosie, with Charles as the primary physical custodian. Nevertheless, he ordered Charles to pay child support to Latresa. "[A]n order that does not require a non-custodial parent to pay child support should be entered only in rare circumstances. The Chancellor should also include detailed findings in the order to support the decision to relieve a non-custodial parent from their financial obligation to support their children." **Brawdy v. Howell**, 841 So.2d 1175, 1179(¶ 16) (Miss.

---

[3] Latresa had engaged in an adulterous affair. However, the affair began after the parties had separated.

Ct. App.2003) (citing **Knutson v. Knutson**, 704 So. 2d 1331, 1334 (Miss. 1997)).

In his ruling, the Chancellor stated that the child support guidelines of Mississippi Code Annotated Section 43-19-101 did not apply, based on the needs of Rosie and based on the disparity of income between Charles and Latresa. Accordingly, the Chancellor applied the statutory criteria for overcoming the presumption that the child support guidelines were appropriate. Miss. Code Ann. § 43-19-103 (Rev. 2004). Some of the factors that a Chancellor should consider include the parties' respective incomes, the shared parental arrangement, the earning ability of the parties, and the extraordinary medical, psychological, educational, or dental expenses of the child. **Id**.

The Chancellor ordered Charles to pay $400 per month as child support and also ordered Charles to maintain a policy of health insurance covering Rosie, with Charles and Latresa each paying half of any medical or dental expenses incurred for Rosie's benefit. The Chancellor justified this award by noting the disparity in income between Charles and Latresa, by noting the fact that Latresa has joint legal custody over Rosie and enjoys extended visitation with Rosie, and by recognizing the high level of medical expenses incurred on Rosie's behalf. In addition, when the Chancellor denied Charles' motion for reconsideration the Chancellor added that Charles voluntarily and willingly paid $1,000 per month for Rosie's care while the parties were separated.[4]

In **Hensarling v. Hensarling**, 824 So. 2d 583, 588 (¶ 15) (Miss. 2002), the Mississippi Supreme Court upheld the Chancellor's ruling that the child support guidelines were inapplicable, where the ex-husband had the ability to earn a substantial income as a doctor and the ex-wife had no source of income. "[T]he statutory guidelines regarding child support are not absolute, and the actual circumstances in each case are to be taken into consideration by the Chancellor when making his award." **Id**. (citing **Thurman v. Thurman**, 559 So. 2d 1014, 1017-18 (Miss. 1990)). In the present case, the Chancellor properly considered statutory guidelines that would justify granting child support to the parent who does not have primary physical custody of the minor child.

**Rush**, 2005 WL 1870253 * 4-5.

---

[4] The temporary child support paid by Charles to Latresa was for the period *before* the divorce was granted when *Latresa had primary custody of Rosie.*

¶13. Latresa argued, and the Court of Appeals' majority relied upon, a Court of Appeals case, *Brawdy v. Howell*, 841 So. 2d 1175 (Miss. Ct. App. 2003), to reach its decision to affirm the Chancellor's award of child support to the non-custodial parent, Latresa. The Court of Appeals reasoned that because a "non-custodial parent" could be relieved of the financial obligation to support the child in rare circumstances and the child support statutory guidelines were not followed, the "custodial parent" could also be ordered to pay child support to the "non-custodial parent" in rare circumstances.[5]

¶14. However, *Brawdy* does not address the facts at hand. *Brawdy* held that in rare circumstances the **non-custodial parent** may be **relieved** of the financial obligation to pay child support. *Id*. at 1179. Here, the Chancellor did relieve Latresa of having to support Rosie as she was not ordered to pay any of child support for Rosie even though Latresa is the "non-custodial parent." Latresa's lack of child support obligation for Rosie is not contested by Charles. The issue before the Court is whether Charles should be obligated to pay child support to Latresa as the "non-custodial parent" when Latresa was not obligated to bear any of the financial obligation for Rosie's care and welfare. In fact, Charles was also ordered to maintain health insurance coverage on Rosie.

¶15. The Court of Appeals' separate opinion, concurring in part and dissenting in part, disagreed with the majority regarding the child support issue and stated:

---

[5] Again, we emphasize that the Chancellor's order, as worded, provides for joint legal and physical custody, and thus does not provide for a non-custodial parent.

The Chancellor acknowledged that, due to the nature of the custodial arrangement, the child support guidelines were inappropriate and not reasonable. I agree with this observation. However, I cannot discern the appropriateness of ordering Charles to pay child support to Latresa. In arriving at his decision, the Chancellor mentioned the large disparity in income and in earning ability between the parties. Although there is a substantial disparity in Charles's and Latresa's incomes, there is also a large disparity in the time in which Charles and Latresa will have custody of the minor child. **Charles will have custody of the minor child for the overwhelming majority of the time. It seems to me that not requiring Latresa, the non-custodial parent, to pay child support is a sufficient adjustment for the disparity in income. Making the adjustment the other way seems to have the effect of placing a double child support burden on Charles, particularly, in light of the fact that he will have to provide for the minor child on a regular and continuous basis. The amount of time encompassed by Latresa's periods of visitation with the minor child can hardly justify placing an additional financial burden on Charles in the way of child support.** In my judgment, the Chancellor abused his discretion and erred by ordering Charles to pay child support while at the same time awarding to Charles the physical custody of the child for whom the child support payments were ordered.

*Rush*, 2005 WL 1870253 * 8 (emphasis added).

¶16. As the separate opinion succinctly expressed, Latresa is not only relieved of her financial obligation to support Rosie, Charles was ordered to bear a "double child support burden" as he provides for Rosie's financial needs on a regular and continuous basis. Charles also was ordered to provide health insurance coverage for Rosie. An order that does not require a non-custodial parent to pay child support should be entered only in rare circumstances. *Knutson v. Knutson*, 704 So. 2d 1331, 1334 (Miss. 1997). The Chancellor should also include detailed findings in the order to support the decision to relieve a non-custodial parent from their financial obligation to support his/her child. *Id*.

8

¶17.   We are concerned with the Chancellor's use of the wording, joint physical custody, as it causes confusion.   Despite the Chancellor's language that Charles and Latresa were awarded joint legal and physical custody, the Chancellor *addressed specified periods of visitation* for the minor child with Latresa.   The Chancellor awarded Latresa the following specified visitation rights to Rosie:

> Otherwise, if not agreed, the mother shall have custody/visitation with Rosie on *alternate weekends* from 6:00 p.m. on Friday until 6:00 p.m. on Sunday immediately following, and at those times generally recognized by the court as regular visitation.   This will include *extended periods during the summer, Christmas, and other holidays*, as well as other times generally recognized by the Court as periods of standard visitation.   In addition to those generally recognized times, Mrs. Rush [Latresa] shall have custody/visitation with Rosie overnight each week on *Tuesday nights*, with the mother to enjoy such custody/visitation beginning at the time Rosie gets out of school on Tuesday and ending upon her return to school on Wednesday, and with the mother to be responsible for picking up Rosie from school on Tuesday afternoon and thereafter returning her to school at the conclusion of that visitation period if school is in session the following Wednesday, or to Mr. Rush [Charles] at 8:00 a.m. on the following Wednesday, if school is not in session.

The Chancellor further limited Latresa's visitation with Rosie to preclude Rosie's exposure to and to prohibit her being in the presence of or being left alone in the presence of Latresa's paramour, Ashley Sutton.

¶18.   Based on the specified visitation period stated, Charles bears the lion's share of time caring for the minor child, Rosie, and as such, has physical custody of the minor child the majority of time.   As such, the language in the case sub judice falls woefully short of establishing that Latresa was awarded joint physical custody of the minor child.   Since Charles

has the most extensive time with the minor child, he also bears the primary financial obligation of providing for the minor child's financial needs.

¶19.    Likewise, nothing in the record demonstrates that Charles does not continue to provide for the minor child's financial needs as Latresa was not ordered to pay any child support to care for Rosie's financial needs.    The Chancellor completely relieved Latresa of any specific monthly financial obligation to care for her child.    Latresa was also not ordered to pay for any other of the minor child's financial needs, *e.g.*, education, extra-curricular activities, or medical or dental insurance.    Charles was specifically ordered to maintain the minor child's health insurance.    Only the medical or dental expenses not covered by the insurance were ordered to be divided between the parties.

¶20.    Here, the record reflects that Charles bears the overwhelming responsibility for Rosie's care and welfare.    For all practical purposes, Charles was granted physical custody of Rosie subject to Latresa's visitation rights.    The terms of Latresa's visitation rights are not unusual. Rosie is never solely in Latresa's care for any extended or substantial period of time.    As such, under the terms of the Chancellor's order, Rosie is never in Latresa's care long enough to support the Chancellor's award of joint physical custody or child support to Latresa.    However, the contradictory terminology in the Chancellor's order requires that we remand for clarification.

**CONCLUSION**

¶21.    For all the reasons stated herein, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the judgment of the Rankin County Chancery Court, as to the

10

issue of the monthly child support obligation in the amount of $400 to Latresa for Rosie, is remanded to the trial court in order to provide clarity and explanation as to its judgment and entry of a new judgment as to the physical custody and child support issues addressed by this Court. The trial court shall on remand clarify the contradictory language used in its judgment. The trial court granted the parties joint legal and physical custody of the minor child, but the trial court also specified visitation for Latresa which does not comply with Section 93-5-24's requirement of "significant periods of physical custody." As to the other issues raised by Charles not specifically addressed by this opinion, the judgment of the Rankin County Chancery Court is affirmed.

¶22. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS VACATED AND REMANDED IN PART; AND AFFIRMED IN PART.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON, DICKINSON, AND RANDOLPH, JJ., CONCUR. GRAVES, J., NOT PARTICIPATING.**

11