# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00770-COA

**PHILLIP JOSEPH LAMY**                                                                   **APPELLANT**

**v.**

**ELIZABETH ANN LAMY**                                                                     **APPELLEE**

DATE OF JUDGMENT:                06/16/2021
TRIAL JUDGE:                     HON. JENNIFER T. SCHLOEGEL
COURT FROM WHICH APPEALED:       HARRISON COUNTY CHANCERY COURT,
                                 FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          WILLIAM BRIAN ATCHISON
ATTORNEY FOR APPELLEE:           DONALD WAYNE MEDLEY
NATURE OF THE CASE:              CIVIL - CUSTODY
DISPOSITION:                     AFFIRMED IN PART; REVERSED AND
                                 REMANDED IN PART - 11/29/2022
MOTION FOR REHEARING FILED:

     **EN BANC.**

     **EMFINGER, J., FOR THE COURT:**

¶1.     On June 16, 2021, the Chancery Court of Harrison County entered a judgment on

Phillip Lamy's "Complaint for Modification and For Contempt" and Elizabeth Lamy's

"Counter-Claim For Modification." Aggrieved by the ruling of the chancery court, Phillip

appeals.

## FACTS AND PROCEDURAL HISTORY

¶2.     Phillip and Elizabeth Lamy were adult resident citizens of Harrison County at the time

they filed for divorce on September 22, 2015.  They had three minor children, P.J.L., born

in August 2011; O.A.L., born in September 2012; and R.W.L., born in August 2014.[1] On

June 12, 2018, the Chancery Court of Harrison County granted Phillip and Elizabeth a final

judgment of divorce on the statutory ground of irreconcilable differences. While the final

judgment granted the parties a divorce, the court reserved the issues and claims for custody,

visitation, and child support for a future order. An "Agreed Order on Custody" (agreed

order) was entered on September 9, 2019, without the necessity of a trial.

¶3.　　On April 28, 2020, Phillip filed his "Complaint for Modification and For Contempt."

According to Phillip's complaint and his testimony at trial, Elizabeth "failed and refused to

comply" with the agreed order and therefore should be held in contempt. More specifically,

his complaint alleged the following:

> a. On or about December 6, 2019, [Elizabeth (Defendant)] refused to exchange the children. Phillip [(Plaintiff)] was forced to obtain the assistance of the Hancock County Sheriff's Department to force Defendant to allow the children custody time with the Plaintiff.
>
> b. On or about February 24, 2020, Defendant moved with the children and failed and refused to provide the children's address to the Plaintiff.
>
> c. Defendant enrolled the children in a different school without discussing or allowing Plaintiff involvement in the decision.
>
> d. Defendant failed and refused to list Plaintiff as the children's father and a person with joint legal custody with rights of access to the children's school records and as an emergency contact. Plaintiff had to go to the school to have his information added to the school records.
>
> e. Since on or about March 2, 2020, Defendant has failed to follow the Court's Order by refusing to allow the Plaintiff his custody/visitation time with the minor children and refusing to allow the minor children to talk to the Plaintiff on the telephone or through other electronic

---

[1] Initials have been used for the minors in this case to protect their identities.

media.

f. [Defendant] failed and refused to allow the Plaintiff to even have social distancing visitation with the minor children during times that she is allowing other people to have social distancing visitation with the children.

Phillip further alleged that since the date of the agreed order, there had been a material change in circumstances in Elizabeth's home that adversely affected the minor children, and, therefore, the agreed order should be modified. According to Phillip, not only had Elizabeth taken the actions described above in an attempt to alienate him from the children, she also had stopped working and was currently receiving monthly disability payments. Phillip claimed that because Elizabeth was not working, she was no longer able to provide for the minor children. Among other requests for relief, Phillip requested that he be granted physical custody of the minor children subject to standard visitation to be exercised by Elizabeth. Phillip also requested that Elizabeth be required to pay child support for the benefit of the minor children.

¶4. On May 18, 2020, Elizabeth filed a response to Phillip's complaint, which included a counter-claim for modification. In her response and in her testimony at trial, Elizabeth denied taking any actions to alienate the children from Phillip. She also alleged that she "acted wholly and completely in the best interest of the children." Elizabeth claimed that she discussed "the issues of the children's school work and the problems associated with that [with Phillip,] but she could not get a resolution." Elizabeth claimed that there had been a "material change of circumstances of the parties which would warrant a modification." According to Elizabeth, the minor children needed a more consistent and disciplined

schedule to excel in their schooling and education. She alleged that during the height of the COVID-19 pandemic when the children were being home-schooled, Phillip "did not maintain a consistent, punctual, or disciplined approach with the children's school work, and as a result, all three fell behind." For that reason, she maintained, she kept the children with her during the school week despite the agreed order. Additionally, Elizabeth's counter-complaint stated that Phillip harassed her by constantly driving by her residence (contrary to his assertion that he did not know where she was living with the children). She also claimed that Phillip often made disparaging remarks about her to the children and allowed the children to play and watch age-inappropriate games, music, and videos. According to Elizabeth, Phillip did not pay proper attention to the children's hygiene, and the children came home with both head lice and bed bug bites after visiting their father. For these reasons, Elizabeth requested that the chancery court allow her to have "primary custody of the children with the father to have appropriate visitation that works for the best interest of the children's education." Phillip filed an answer to Elizabeth's counterclaim on August 18, 2020.

¶5. On June 1, 2020, the chancery court entered an "Order on Temporary Features," which stated in part that Tara Kellar, the guardian ad litem (GAL) previously appointed by the chancery court in the parties' divorce action, would be re-appointed to investigate the allegations in the pending litigation. The temporary order also set out the terms for summer visitation, granting Phillip visitation with the minor children for the vast majority of the summer.

¶6. The trial began in the chancery court on June 10, 2021. Other than the parties, the

4

only other witness to testify at trial was the GAL. The GAL's report was entered into evidence as Exhibit 3.[2] In furtherance of her investigation, the GAL interviewed Elizabeth, Phillip, and each of the three children on two separate occasions. In addition to the interviews, the GAL reviewed a substantial amount of documents and correspondence provided by the parties and their attorneys, including photographs, school records, medical records, emails, and other correspondence. According to the GAL, it was her opinion that Phillip failed to meet his burden and, therefore, a modification of physical custody was not appropriate. Further, the GAL testified that "the visitation schedule that was in place in September of 2019 [was] not a viable schedule working in the children's best interests." More specifically, the GAL stated:

> As the Court is aware, this Court has attempted numerous schedules that would allot fairly equal time for both parties. All of those schedules have led to chaos, confusion, arguments, and continued litigation. . . . [T]he hardest thing in the children's life at this point is constantly being tugged and torn and being drugged - - drugged through this and not knowing what's going on in - - in their life. They have a lot of anxiety, and I think a lot of it stems from the fact they're being - - they're being torn.

After the GAL gave her recommendation, the chancellor announced her ruling from the

---

[2] The GAL's report that was produced prior to trial and introduced as Exhibit 3 was prepared based on the GAL's understanding that the parties shared joint physical custody of the minor children. However, before the GAL gave her recommendation at trial, the chancery court informed the GAL that the order dated September 9, 2019, vested sole physical custody of the minor children with Elizabeth and visitation with Phillip. The GAL testified that her recommendation to the court was not affected by the distinction; however, the standard she applied would differ, and the *Albright* analysis contained within the report was unnecessary. The GAL modified her report to address the appropriate standard for modification of custody on the record and pursuant to the court's request, and she filed an addendum to her report on June 15, 2021. Based on the court's ruling, the original GAL report should be utilized by the chancellor on remand.

bench and she denied all the relief requested in Phillip's complaint. The chancellor adopted the recommendation of the GAL and held in part that physical custody of the children should remain with Elizabeth subject to Phillip's modified visitation, which would occur every other weekend going forward.

¶7. On June 16, 2021, the chancery court's judgment was entered, memorializing its bench ruling from June 10, 2021. On July 9, 2021, Phillip filed his notice of appeal.

## STANDARD OF REVIEW

¶8. "This Court employs a limited standard of review in child-custody cases and will 'affirm findings of fact by chancellors . . . when they are supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" *Carter v. Carter*, 204 So. 3d 747, 756 (¶37) (Miss. 2016) (quoting *Borden v. Borden*, 167 So. 3d 238, 241 (¶4) (Miss. 2014)). "This Court may reverse a chancellor's finding of fact only when there is no 'substantial credible evidence in the record' to justify his finding." *Hensarling v. Hensarling*, 824 So. 2d 583, 586 (¶7) (Miss. 2002) (quoting *Henderson v. Henderson*, 757 So. 2d 285, 289 (¶19) (Miss. 2000)). This Court reviews all questions of law de novo. *Townsend v. Townsend*, 859 So. 2d 370, 372 (¶7) (Miss. 2003).

## ANALYSIS

¶9. Phillip raises ten issues on appeal regarding the chancery court's admission of certain evidence at trial and its denial of his request for a modification of custody and contempt against Elizabeth. Some of the issues raised on appeal have been consolidated in the Court's

6

analysis below.

## I. Admission of Evidence Utilized by the Guardian Ad Litem

¶10. Phillip argues that the chancery court erred in "denying [his] Motion to exclude evidence attached to the Guardian Ad Litem report and utilized by the Guardian Ad Litem not disclosed in discovery." He claims that Elizabeth did not provide him or his attorney any of the documents that were attached to the GAL's report despite that information being requested through discovery. According to Phillip, he was provided medical records, reports, and other documents for the first time on the night before trial when he received the GAL's report.

¶11. First and foremost, the evidence that Phillip sought to exclude at trial was not introduced or used by Elizabeth's attorney in the presentation of her case-in-chief in violation of the rules of discovery. The documents that Phillip sought to exclude were attached to the GAL's report. However, the majority of those documents were not referenced with specificity in the GAL's testimony at trial. Mississippi Code Annotated section 43-21-121(3) (Rev. 2021) states in part:

> [A] guardian ad litem shall have the duty to protect the interest of a child for whom he has been appointed guardian ad litem. The guardian ad litem shall investigate, make recommendations to the court or enter reports as necessary to **hold paramount the child's best interest**.

(Emphasis added). In *S.G. v. D.C.*, 13 So. 3d 269, 282 (¶57) (Miss. 2009), the Mississippi Supreme Court stated in part:

> [A] guardian ad litem appointed to investigate and report to the court is obligated to investigate the allegations before the court, process the information found, report all material information to the court, and (if

7

requested) make a recommendation. However, the guardian ad litem should make recommendations only after **providing the court with all material information which weighs on the issue** to be decided by the court, including information which does not support the recommendation. The court must be provided all material information the guardian ad litem reviewed in order to make the recommendation.

(Emphasis added). Further, in *McDonald v. McDonald*, 39 So. 3d 868, 883 (¶49) (Miss. 2010), the supreme court stated that in that case:

the GAL would have been derelict in her duty to zealously represent the boys' best interests if she had failed to interview the boys, consider the opinions of experts, marshal evidence, make an independent recommendation, question witnesses, submit reports, and make herself available for cross-examination.

While the GAL is tasked with investigating and advising the court, the GAL is not a substitute for the court, and the court is the ultimate finder of fact. *Id*. at 282 (¶56).

¶12. In the case at hand, one of the issues placed before the court was the modification of child custody or visitation. In her investigation, the GAL reviewed school records, progress reports, therapy notes from the children's therapist, Facebook postings, and correspondence from the parties in furtherance of their arguments for the relief requested in their respective pleadings. There is no indication that the GAL reviewed anything that was not provided to her to fulfill the duties outlined in Mississippi Code Annotated section 43-21-121(3) as related to the parties' children. In strict compliance with the caselaw already discussed, the GAL attached to her report **everything** that she looked at and considered throughout her investigation. When asked at trial if she normally attached exhibits to her report, she answered in part:

I do. There's that really old case that says that if I looked at it and I considered it, I should make sure that I disclose it, so I recognize that when I attach this,

8

that . . . there may be objections to those exhibits. But, in an effort for me to have full disclosure on what I read and what I saw, I feel like this is the best way for me to make sure that . . . you know what I'm operating under . . . .

At the onset of the trial, Phillip's attorney requested that "the GAL report not be allowed into evidence, that it's been tainted by the discovery violation perpetrated by opposing counsel." After denying the motion, and in an effort to address some of Phillip's concerns, the chancellor asked, "[D]o you need more time to review Ms. Tebo's report?" Phillip's attorney responded, "No, ma'am," and therefore no additional time was provided to review the documents attached to the report. Because Elizabeth's attorney did not have any documents introduced into evidence at trial in her case-in-chief that were not properly disclosed during the discovery process, and because Phillip's attorney declined the additional time offered by the court to review the GAL report, this argument is without merit.

## II. Classification of the Agreed Order Dated September 9, 2019

¶13. Phillip argues that the chancery court wrongfully classified the parties' agreed order of custody dated September 9, 2019, and treated it as a temporary order rather than a permanent order. His argument is based upon a conversation during the trial between the chancery court and the attorneys. The conversation stated in part:

> THE COURT: . . . [Y]ou were set on a contempt and modification, and you have presented your evidence for that today. I mean, these other orders were temporary.
>
> MS. KELLAR: That's right, your Honor.
>
> THE COURT: And so a final order, a final judgment needs to be put in place regarding the custody of the children, and that's what y'all intend to provide today; right?

9

MR. MEDLEY:       Yes.

THE COURT:        You don't intend to have a separate hearing for that?

MR. ATCHISON:     No.

THE COURT:        Ok. I just . . .

MS. KELLAR:       And . . . and we would be modifying this particular agreed order, September 9th of 2019, and that's why I'm wanting the Court's clarification.

THE COURT:        Right. Okay. So let me just say this . . . the standards for modification are not quite the same when you're applying them to temporary orders, because a temporary order is just that, albeit these were agreements between the parties, but they were not final adjudication, I think.

MS. KELLAR:        This one was.

THE COURT:        which one?

MS. KELLAR:       This was . . . 2019 order was the final custody order, which is being modified, and that's . . .

MR. ATCHISON:     And . . . that's the one we want modified. . . .

THE COURT:        Okay. So you . . . I see, because then the 2020 order is the temporary?

MS. KELLAR:       Yes, Your Honor. There's been two temporary orders, I believe . . .

THE COURT:        Okay.

MS. KELLAR:       . . . entered since that final order. I know it doesn't say "final," but it was the final order.

THE COURT:        I see.

MS. KELLAR:       And . . . my concern is that based on the Court's interpretation of that final judgment, the modification

10

standard would be different.

THE COURT: Okay. Well, the way I read this order, and we don't use these terms anymore, but, obviously, the mother - - physical custody means sole physical custody. That's what that means. And then it is visitation to the other parent. That's what that means.

While it is clear from the above exchange that there was initially some confusion by the chancery court as to the nature of the orders entered in this case, and which one was being modified, it is equally clear that the confusion was eliminated. Therefore, this argument is without merit.

### III. Interpretation of the Agreed Order Dated September 9, 2019

¶14. Phillip argues that the chancery court erred in its interpretation of the parties' Agreed Order on Custody dated September 9, 2019.[3] The agreed order stated in part:

    A.    CUSTODY: The parties shall share joint legal custody of the

---

[3] The Agreed Order on Custody was signed by both parties and their attorneys, as well as the chancellor. Its interpretation is a question of law and is reviewed de novo. *See McFarland v. McFarland*, 105 So. 3d 1111, 1118 (¶21) (Miss. 2013) (citing *Harris v. Harris*, 988 So. 2d 376, 378 (¶8) (Miss. 2008)); *Riley v. Wiggins*, 908 So. 2d 893, 899 (Miss. Ct. App. 2005); *McDowell v. Zion Baptist Church*, 203 So. 3d 676, 682 (Miss. Ct. App. 2016). Further, in *Webster v. Webster*, 566 So. 2d 214, 216 (Miss. 1990), the Mississippi Supreme Court reasoned that where the question before the court is essentially one of interpretation of a legal text, the review is de novo. More specifically, the supreme court held:

> The judicial task is to view the terms of the document, find their legal meaning, and adjudge their enforceability vel non. The familiar manifest error/substantial evidence rules have no application to our appellate review of such questions. *Busching v. Griffin*, 542 So. 2d 860, 863 (Miss. 1989); *see also Harrison County v. City of Gulfport*, 557 So. 2d 780,784 (Miss. 1990); *Cole v. National Life Insurance Co.*, 549 So. 2d 1301, 1303 (Miss. 1989); *UHS-Qualicaare Inc. v. Gulf Coast Community Hospital Inc.*, 525 So. 2d 746, 754 (Miss. 1987).

children with **primary physical custody** to the mother, Elizabeth Ann Lamy, **with custody for the father**, Phillip Joseph Lamy, as set out herein.

B.    **FATHER'S CUSTODY**:

a.    **The Father shall enjoy custody** with the minor children every other week; the father shall pick up the children from school on Friday afternoon and deliver the children to school the following Friday morning. Should the father not be able to meet this schedule, he shall give the mother 48 hours notice to allow her to adjust her schedule to care for the children.

(Emphasis added). The term "visitation" was used in the agreed order only to describe each parent's time with the children during holidays and special occasions. Relative to child support and decisions affecting the children, the agreement provides:

C.    SUPPORT: The parties agree that the custody and visitation schedule set out herein gives closely equal time of each parent with the children, and, thus, no child support will be paid at this time; the husband shall continue to provide health insurance for the children. The parties will alternate years claiming the children as a dependent for income tax.

3.    Access to records and information pertaining to these minor children, including but not limited to medical, dental and school records, shall not be denied to either parent and **each shall have equal opportunity in decisions affecting the children.**

(Emphasis added). According to Phillip, the agreed order granted the parties joint legal **and** joint physical custody as evidenced by the fact that neither party was ordered to pay child support to the other parent, and the parties shared close to equal time with the children.

¶15.   Pursuant to Mississippi Code Annotated section 93-5-24(1) (Rev. 2021), physical custody may be granted to both parents jointly **or** granted to either parent individually.  In

12

*Rush v. Rush*, 932 So. 2d 794, 796 (¶9) (Miss. 2006), the Mississippi Supreme Court stated, "Although it is a phrase commonly used by lawyers and judges, there is actually no provision under the statute for 'primary' physical custody." In *Kaiser v. Kaiser*, 281 So. 3d 1136, 1138 (¶1) (Miss. Ct. App. 2019), this court noted:

> As this Court has noted, "there is actually no provision under the statute for 'primary' physical custody." *Shows v. Cross*, 238 So. 3d 1224, 1227 n.2 (Miss. Ct. App. 2018) (quoting *Rush v. Rush*, 932 So. 2d 794, 796 (¶9) (Miss. 2006) (discussing Miss. Code Ann. § 93-5-24 (Rev. 2004)). But lawyers and judges commonly use the phrase. "As in this case, the phrase 'primary physical custody' is often meant to describe physical custody in one parent, with the other having specified visitation rights." *Id*.

Other cases have similar reasoning. *McSwain v. McSwain*, 943 So. 2d 1288, 1290 (¶2) (Miss. 2006); *Neely v. Welch*, 194 So. 3d 149, 152 (¶4) (Miss. Ct. App. 2015); *Shows*, 238 So. 3d at 1227 (¶3). While these cases and others support the chancellor's interpretation of the custody agreement using the term "primary physical custody" to mean sole physical custody with Elizabeth and visitation with Phillip, the remainder of the language in this agreement requires a different conclusion in this case.

¶16. According to Mississippi Code Annotated section 93-5-24(5)(c), "joint physical custody means that each of the parents shall have significant periods of physical custody. Joint physical custody shall be shared by the parents in such a way so as to assure a child of frequent and continuing contact with both parents." In the present case, the agreed order describes the father's time with the children as "Father's Custody," not visitation. As noted above, the term "visitation" is only used to describe the time each parent spends with the children during holidays and special occasions. The agreed order also notes that the parents'

13

periods of "custody and visitation" are almost equal, and, therefore, neither parent will be required to pay child support.

¶17.    Further, the agreement gives both parents "equal opportunity in decisions affecting the children." This provision concerning the right to make decisions affecting the children supports Phillip's contention that the agreed order provided for joint legal and joint physical custody. In *In re C.T.*, 228 So. 3d 311, 316 (¶9) (Miss. Ct. App. 2017), this Court explained:

> Mississippi caselaw also recognizes that "the custodial parent may determine the child's upbringing, including his education and health and dental care. Such discretion is inherent in custody. It is vested in the custodial [parent]." *Clements v. Young*, 481 So. 2d 263, 267 (Miss. 1985); *see also Ayers v. Ayers*, 734 So. 2d 213, 217 (¶20) (Miss. Ct. App. 1999).

The fact that the Agreed Order on Custody gave the parents equal rights in making decisions affecting the children indicates that both parents were considered "custodial" parents. Further Mississippi Code Annotated section 93-5-24(5)(e) reads in part:

> (e) For the purposes of this section, "joint legal custody" means that the parents or parties share the decision-making rights, the responsibilities and the authority relating to the health, education and welfare of a child. An award of joint legal custody obligates the parties to exchange information concerning the health, education and welfare of the minor child, and to confer with one another in the exercise of decision-making rights, responsibilities and authority.
>
> An award of joint physical and legal custody obligates the parties to exchange information concerning the health, education and welfare of the minor child, and unless allocated, apportioned or decreed, the parents or parties shall confer with one another in the exercise of decision-making rights, responsibilities and authority.

Here the agreed order expressly grants the parties joint legal custody, and the remainder of the terms of the agreed order describes and provides for the parents to share joint physical

14

custody.

¶18.   Considering the specific language used in the Agreed Order on Custody, we find that Phillip and Elizabeth were awarded joint legal custody and joint physical custody. Therefore, the chancellor erred as a matter of law by interpreting the September 9, 2019 Agreed Order on Custody to award sole physical custody to Elizabeth. This error resulted in the chancery court applying an incorrect legal standard in its decisions regarding the modification of custody as requested by both parties, the changes in periods of custody or visitation, and in the award of child support. Accordingly, these issues must be remanded for the chancery court's reconsideration in conformity with this opinion.

## IV.   Contempt

¶19.   Phillip argues that the chancery court erred by not finding Elizabeth in contempt of the September 9, 2019 agreed order at trial. More specifically, Phillip claims that Elizabeth denied him periods of custody or visitation with the children between March 10, 2020, and May 20, 2020, failed to advise him that the children were receiving therapy, and failed to present a complete financial declaration at trial.

¶20.   The law is well settled when it comes to the review of contempt issues:

> "Whether a party is in contempt is a question of fact to be decided on a case-by-case basis." *Gilliland v. Gilliland*, 984 So. 2d 364, 370 (¶19) (Miss. Ct. App. 2008). "A chancellor has substantial discretion in deciding contempt matters because of the chancellor's temporal and visual proximity to the litigants." *Id*. at 369-70 (¶19) (quotation marks omitted). With respect to a finding of civil contempt, "the factual findings of the chancellor are affirmed unless manifest error is present and apparent." *Purvis* [*v. Purvis*], 657 So. 2d [794,] 797 [(Miss. 1994)].

*Savell v. Manning*, 325 So. 3d 1208, 1220 (¶43) (Miss. Ct. App. 2021). "Furthermore, it is

the responsibility of [the appellate court] like the chancellor, to make the best interest of the child our 'polestar' consideration." *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (¶8) (Miss. 2002); *J.P. v. S.V.B.*, 987 So. 2d 975, 979 (¶7) (Miss. 2008).

### A. Denial of Custody and Visitation

¶21. Elizabeth did not deny that she kept the children during Phillip's periods of custody from March 2020 until May 2020. However, she claimed that she did so in an effort to focus on their education. She testified that "[d]uring COVID . . . [the children] stayed at my house and I home[-]schooled them . . . ." She further testified that

> when school was closed, I was focused on their education between two houses, trying to home[-]school children on two different schedules. It was not working. . . . I kept them during COVID, and I home[-]schooled them, and I'm focused on their education.

There is conflicting testimony between the parties as to whether Phillip was allowed any telephonic or electronic contact with the children during that time frame. Elizabeth testified that she never denied Phillip access to the children via phone; however, Phillip contends that his phone calls went unanswered. However, Phillip also testified that he did not have any proof to show that Elizabeth failed to answer his phone calls because he was using a work phone and no longer had access to those phone records.

¶22. The GAL testified at trial that the chancery court had attempted to implement numerous schedules concerning the children; however, "all of those schedules have led to chaos, confusion, arguments, and continued litigation." Within her report, and specifically in the portions summarizing her interviews with the children, the GAL noted the children's observations of how the custody schedule was affecting their schoolwork. P.J.L. reported

that "his mother helps with schoolwork, but [his] father does not." He also reported that "his grades are better when he is with his mother and that he was failing when he was with his father." O.A.L. reported that "at her father's [house] they were doing more fun things and not doing all their schoolwork, and her mother makes sure it all gets done and that her mother is better at schoolwork." According to O.A.L., "now that she is always with her mother on school nights, it is less confusing. She reported that she likes this schedule way better." R.W.L. reported that "her grades are good and that her mother helps her with her schoolwork." According to R.W.L., "she is with her mother during the week, and that is a good thing. . . . [S]he likes doing schoolwork and chores for her mother." The children's version of events concerning their education before and after Elizabeth began keeping them with her on the weekdays falls in line with Elizabeth's testimony at trial. Because of the testimony and report presented by the GAL, which corroborated Elizabeth's testimony concerning the children's education, the chancellor did not abuse her discretion, especially during this time of a global pandemic, by not finding Elizabeth in contempt in this regard.

### B. Notification of the Children's Therapy Sessions

¶23. Phillip argues that the chancery court erred by not holding Elizabeth in contempt for failing to notify him that the children were attending therapy sessions. While Phillip acknowledges that he would have been allowed access to the therapy records without going through Elizabeth, he claims that he had no way of knowing that the children were in therapy or that any such records existed because Elizabeth did not disclose that information.

¶24. There was conflicting testimony in the record as to what information concerning the

children was either shared or withheld by the parties. In her ruling, the chancellor stated:

> [Elizabeth] should have communicated all this information to [Phillip]. She claims that she did. He claims that she didn't, and . . . I can't find evidence that corroborates one more than the other, and so I'm not going to find that she is in willful contempt of this matter.

In *Weathersby v. Weathersby*, 693 So. 2d 1348, 1353 (Miss. 1997), the supreme court stated that:

> The chancellor made his finding based on conflicting testimony, and under the well established rule that we do not reverse a chancellor for finding of fact unless his findings are clearly against the weight of the evidence, we affirm and hold that the petition for citation for contempt was properly dismissed.

Similarly, in the case at hand and based on the conflicting testimony at trial, we find no error in the chancery court's ruling to deny Phillip's complaint for contempt on this issue.

### C.    Uniform Chancery Court Rule 8.05 Financial Declaration

¶25.    Phillip argues that the chancery court should have held Elizabeth in contempt for not providing a complete financial declaration as required by Uniform Chancery Court Rule 8.05. While Phillip argued at trial that the financial form was incomplete and did not include the required attachments such as tax return and paystubs, he made no objection to it being marked as an exhibit at trial. More specifically the exchange that took place between the attorneys and the court was transcribed as follows:

| | |
|---|---|
| MR. MEDLEY: | Your Honor, we'd like for this to be admitted as an exhibit to her testimony. It's been marked for ID as No. 13. |
| THE COURT: | I assume there's no objection, and we'll have it marked. |
| MR. ATCHISON: | It's incomplete and fails to have any of the required attachments, tax returns, paystubs, but we'll let it in. . . . |

18

THE COURT:    I'll go on and allow it to come in, and understanding it does not have all the documents attached.

On cross-examination, Phillip's attorney thoroughly questioned Elizabeth about the contents of her financial declaration. After he finished his cross-examination, he did not make an objection to the financial declaration or ask that the court find Elizabeth in contempt for it being incomplete.

¶26. "In *Southern v. Mississippi State Hosp.*, 853 So. 2d 1212, [1214-15] (Miss. 2003), [the supreme court] reiterated the important procedural tenet that '[a] trial judge cannot be put in error on a matter not presented to him.'" *Chantey Music Pub. Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1060 (¶28) (Miss. 2005). "Precedent mandates that this Court not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs." *Id.* (citing *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 730 (Miss. 1989)). In the case at hand, there was no request that Elizabeth be held in contempt for her inadequate completion of her financial declaration, and the chancery court did not make a ruling on contempt of that issue. Therefore, this argument is without merit.

**CONCLUSION**

¶27. Based upon the above analysis and findings, the chancery court's judgment is affirmed in part as to the issues discussed in Parts I, II, and IV of this opinion. Because the trial court erroneously interpreted the Agreed Order on Custody, the judgment is reversed in part as set forth above in Part III, and the issues of the modification of custody requested by both parties, changes in periods of custody and/or visitation, and the award of child support are

19

remanded to the chancery court for further proceedings consistent with this opinion.

¶28. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**CARLTON, P.J., GREENLEE, LAWRENCE AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., WESTBROOKS AND McCARTY, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WESTBROOKS AND McCARTY, JJ.; McDONALD, J., JOINS IN PART.**

**WILSON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶29. I concur in the majority opinion with the exception of Part IV.A, upholding the chancellor's determination that Elizabeth was not in contempt for withholding the children from Phillip during his periods of custody. As the majority states, Elizabeth admitted "that she kept the children during Phillip's [court-ordered] periods of custody" for over two months, but "she claimed that she did so in an effort to focus on their education" during the early months of the COVID-19 pandemic. *Ante* at ¶21. In other words, Elizabeth willfully violated a court order regarding child custody because she thought she was acting in her children's best interest. That is contempt.

¶30. "The Mississippi Supreme Court has consistently held that the inquiry in a contempt proceeding is limited to whether or not the order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court." *Ellis v. Ellis*, 840 So. 2d 806, 811 (¶18) (Miss. Ct. App. 2003) (quotation marks omitted). "The only defenses to a contempt violation include an inability to comply with the court order or that the court

20

order was unclear." *Id.* (citations omitted). "Therefore, there is no defense for a contempt citation that the contemnor does not agree with the previous order and considers the order of the court decree to be wrong, even though his motives in so doing are based upon pure moral sentiment." *Id.* at (¶19) (quotation marks omitted). "A party must file a motion and obtain a modification of the judgment establishing visitation rather than simply ignore its provisions." *Savell v. Manning*, 325 So. 3d 1208, 1220 (¶42) (Miss. Ct. App. 2021) (quoting *Brown v. Hewlett*, 281 So. 3d 189, 199 (¶37) (Miss. Ct. App. 2019)).

¶31.    In the present case, the relevant custody order clearly provided that Phillip was to have custody of the children "every other week." Despite that clear order, Elizabeth refused to allow Phillip to exercise his periods of custody beginning in March 2020 through May 2020. Elizabeth admitted that Phillip "homeschooled [the children] for a couple of weeks" early in the COVID-19 pandemic, but, in her opinion, "it wasn't working." Therefore, Elizabeth made a unilateral decision to deny Phillip custody of the children. This denial continued for over two months until Phillip obtained a temporary court order granting him custody of the children during the summer.

¶32.    Elizabeth willfully violated a court order, and she failed to present any recognized defense to Phillip's petition for contempt. As stated above, "pure moral sentiment" is not a defense to contempt. *Ellis*, 840 So. 2d at 811 (¶18). If Elizabeth thought Phillip's periods of custody were some sort of danger to her children, she should have sought emergency relief, which remained available even during COVID-19.[4] Elizabeth was not free to "simply

---

[4] *See In re: Emergency Order Related to Coronavirus (COVID-19)*, No. 2020-AD-00001-SCT, at 1 (Miss. Mar. 13, 2020) ("[A]ll state courts – municipal, justice, county,

21

ignore [the] provisions" of the parties' custody order. *Savell*, 325 So. 3d at 1220 (¶42) (quoting *Brown*, 281 So. 3d at 199 (¶37)). Elizabeth was in contempt of court when she acted unilaterally based on her own view that the court-ordered joint custody schedule "wasn't working."

¶33. Because Elizabeth was in contempt, the chancellor clearly erred by finding that she was not. I would reverse and remand the case for the chancellor to determine whether Phillip should be awarded attorney's fees limited to the issue of contempt. *See Brown v. Brown*, 329 So. 3d 544, 562 (¶54) (Miss. Ct. App. 2021) ("The fact that a successful petitioner is eligible for an award of attorney's fees in a contempt action does not automatically entitle him or her to an award." (brackets omitted) (quoting *Suess v. Suess*, 718 So. 2d 1126, 1129-30 (¶13) (Miss. Ct. App. 1998))); *see also Shumake v. Shumake*, 233 So. 3d 234, 240-41 (¶¶21-22) (Miss. 2017) (holding that an award of attorney's fees based on success in a contempt action may not include fees attributable to a related modification action). Accordingly, I respectfully dissent in part.

**BARNES, C.J., WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**

---

chancery, circuit, and appellate courts – will remain open for business to ensure courts fulfill their constitutional and statutory duties."); *In re: Emergency Order Related to Coronavirus (COVID-19)*, No. 2020-AD-00001-SCT, at 2 (Miss. Mar. 20, 2020) ("Emergency Administrative Order-5") ("All courts are urged to limit in-person, courthouse contact as much as possible by utilizing available technologies, including electronic filing, teleconferencing, and videoconferencing. . . . To the extent that the utilization of remote technologies are prohibited, unavailable, or otherwise infeasible, certain in-person proceedings shall continue to be conducted in all local and state courts including, but not limited to: . . . c. Proceedings directly related to: . . . (3) Emergency child-custody orders . . . .").